IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHERYL R. JORDAN,

    Plaintiff,

v.                                        CASE NO: 2:22-cv-167

SCHOOL BOARD OF THE CITY OF NORFOLK
d/b/a NORFOLK PUBLIC SCHOOLS,

    Defendant.

## FIRST AMENDED COMPLAINT

NOW COMES your plaintiff, Cheryl R. Jordan, by counsel, and as and for her First Amended Complaint against the defendant, which is filed as permitted by Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, states as follows:

1. Plaintiff Cheryl R. Jordan ("Jordan") is a resident of the City of Virginia Beach.

2. The School Board of the City of Norfolk ("School Board") is a "body corporate" that is, *inter alia*, "vested with all the powers and charged with all the duties, obligations and responsibilities imposed upon school boards by law and may sue, be sued, contract, be contracted with" pursuant to Code of Virginia §22.1-71.

3. The School Board is vested with responsibility for oversight of Norfolk Public Schools ("NPS") and its employees.

4. At all times material, Jordan was an employee of the School Board, which sometimes identifies itself and conducts business as NPS.

5. According to information published by NPS (Exhibit A), "NPS employs close to 4,495 full-time, permanent staff members."

1

6. Jordan began her employment with NPS in approximately 1997 and became a Principal in July 2007.

7. The essential functions of Principal Jordan's position were/are:

    (a) supervise the educational program of the school at which the Principal is assigned;

    (b) implement School Board policies and regulations;

    (c) supervise professional, paraprofessional administrative and non-professional personnel assigned to the school;

    (d) oversee the safety and administration of the school plant;

    (e) assist in the hiring, training, assigning, and evaluation of the school professional staff;

    (f) assist in the in-service orientation and training of teachers, with special responsibility for staff administrative procedures and instructions;

    (g) supervise preparation of school reports for the NPS central office;

    (h) assume responsibility for attendance, conduct and health of students;

    (i) assist in the management and preparation of the school budget;

    (j) supervise the maintenance and accurate progress and attendance records for students;

    (k) act as a liaison between the school and community, interpreting activities and policies of the school and encouraging community participation in school life;

  (l)  conduct staff meetings as necessary for the proper functioning of the school; and

  (m)  perform other duties as assigned.

  8.  NPS conducted 100% virtual learning for the entire year spanning approximately March 2020 through March 2021.  Jordan performed most of her duties while working remotely during that period of time as Principal of Sherwood Forest Elementary School ("Sherwood"), and she received positive performance evaluations.

  9.  On or about November 12, 2020, NPS was provided with a note (Exhibit B) authored by one of Jordan's health care providers explaining that Jordan was suffering from asthma, and that her symptoms were "exacerbated by environmental exposure specifically at place of employment."  The doctor encouraged remediation of "environmental hazards such as mold or animal/insect infestations", and explained that Jordan would benefit from "accommodations such as remote work as feasible."

  10.  On November 16, 2020, Jordan emailed appropriate NPS school officials and advised that she was suffering from "restrictive lung disease" and asthma, and further advised that the Sherwood school building was making Jordan sick.

  11.  On November 30, 2020, Jordan further advised appropriate NPS officials (Exhibit C) that she was suffering from "occupational asthma and mild restrictive lung disease", and stated that she was looking forward to speaking with an appropriate NPS representative regarding the "Interactive ADA Process [school officials] shared with [Jordan] on last Wednesday."

  12.  On December 2, 2020, an NPS representative was assigned to initiate the ADA interactive process, and Jordan was sent ADA request forms via email.

13. On December 7, 2020, one of Jordan's healthcare providers took her out of work for the time period December 8, 2020 through December 11, 2020 for anxiety, major depressive disorder and asthma. NPS was provided with a doctor's note.

14. On December 30, 2020, Jordan sent an NPS "Accommodation Request Form" (Exhibit D) identifying her medical conditions as "Severe Asthma, Sick Building Syndrome, Mild Restrictive Lung Disease", and explained that she was unable to work physically in the Sherwood School Building "due to environmental asthma and allergy triggers", and requesting to be able to work remotely for the time period January 3, 2021 through June 30, 2021. Jordan also executed forms allowing NPS access to her medical records to support her claims and the request for an accommodation. Notably, all student instruction at this time was 100% virtual, and remained so until March 1, 2021.

15. In January 2021, Jordan provided appropriate NPS officials with notes from several of her healthcare providers (three of which are attached collectively as Exhibit E) supporting Jordan's request to work remotely.

16. In a letter dated February 11, 2021 (Exhibit F), Jordan's request to work remotely was denied without good reason, factually or legally. There are two aspects of the denial letter that are particularly significant. First, it was asserted that she would not be able to perform the essential functions of her job working remotely, even though physical presence at the school was not a part of the job description and was not actually essential for full performance. Second, the denial letter was written and sent to Jordan without any actual "interactive" process.

17.     Jordan responded to the February 11, 2021 denial letter with an email dated February 12, 2021 (Exhibit G), disputed the grounds for denial and requested an "appeal" of the denial decision.

18.     In an email dated May 3, 2021 (Exhibit H), Jordan requested to be transferred to another school in her role as Principal.

19.     On June 2, 2021, NPS posted a "Job Announcement" (Exhibit I) for the role of "Elementary Principal" at Richard Bowling Elementary School ("Richard Bowling").

20.     Because Richard Bowling was a relatively new school building and did not have the environmental problems that were present at Sherwood, Jordan pursued a transfer or reassignment to Richard Bowling.

21.     After being ignored for periods of time and receiving no meaningful ADA accommodations, Jordan sent a July 4, 2021 email (Exhibit J) to the Superintendent of NPS and copied all of the School Board members. Jordan's email outlined and explained many of the problems she was encountering at Sherwood and in her efforts to receive reasonable ADA accommodations, and she concluded with another request "to be reassigned to another building with a healthy and safe environment."

22.     Later in July, Jordan obtained additional letters from two of her doctors (collectively, Exhibit K) and sent them to appropriate NPS officials in a further effort to educate NPS officials on the seriousness of her health problems, the exacerbation of those problems by ongoing exposure to environmental hazards at Sherwood, and in an ongoing effort to obtain reassignment to a safer and cleaner school.

23. Thereafter, on August 9, 2021, Jordan submitted a formal "Charge of Discrimination" (Exhibit L) with the EEOC and requested that the charge be filed "with both the EEOC and the State or local Agency", which was done as indicated on the attached "Notification & Acknowledgement of Dual-Filed Charge" (Exhibit M).  NPS officials were promptly notified of Jordan's EEOC charge of discrimination.

24. Jordan's Charge of Discrimination alleged unlawful disability discrimination and retaliation, and summarized the facts and claims as follows:

> I began employment for Respondent on or about 1997 and became a Principal in July 2007.  I have always met or exceeded my performance expectations.  On or about November 2020, I informed Dr. White, Executive Director, that I was diagnosed with a medical condition that affected a major life function.  Dr. White shared my diagnosis with Mr. Buillups (sic), Chief of HR.  In February 2021, I requested to work from home as an accommodation.  On February 11, 2021, I was denied my request and was informed that Respondent was willing to provide an appropriate air purified (sic) for my workspace.  I sent an appeal with photographs of the school and expressed my concerns that I could not walk around the school without being exposed to harsh air conditions that affected my medical condition.  My appeal was ignored.  After my appeal was ignored, my doctor completed FMLA paperwork and [I] was forced out on FMLA from March 1, 2021 - June 11, 2021.
>
> I then requested to be reassigned or transferred to an available position within the city.  I was aware of several positions that were open or were expected to become available soon.  My request was again denied.  I was forced to return to the building on June 14, 2021 and have subsequently been subjected to further harm and continue to become ill due to my employer's negligence.  Although

6

> Respondent placed one Air Purifier in my office, this attempt to accommodate my request was ineffective, therefore I was forced to place an additional purifier in my office in attempt to preserve my health.  I have made attempts to address the ineffectiveness of the accommodation set as well as other issues with my employer, to include sending an email to board members and the superintendent.  My Pulmonary Specialist and Allergy & Asthma Specialist also sent letters to the Superintendent requesting my reassignment to another school without the environmental concerns.  These efforts have fallen on deaf earns (sic) and I continue to suffer adverse health effects due to my working conditions.
>
> I believe I was denied an effective reasonable accommodation, in retaliation for participating in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

24. In an email dated August 10, 2021 (Exhibit N), Jordan contacted NPS officials and further explained her efforts to continue working as a Principal, and she included this sentence in bold print near the end of her email:  "I am aware that a Principal has not been assigned to Richard Bowling Elementary.  I am therefore asking again, to be reassigned there. Richard Bowling is a fairly new school and should provide a safe and healthy environment; thus preventing recurrent asthmatic episodes."

25. In a letter dated August 17, 2021 (Exhibit O), Jordan was notified that she was being reassigned to Lindenwood Elementary School ("Lindenwood").

26. In the aftermath of being reassigned to Lindenwood, Jordan learned that the individual assigned to be Principal at Richard Bowling had substantially inferior qualifications.  Jordan was already aware that Lindenwood was a much older school,

and she quickly learned that environmental hazards and problems at Lindenwood were similar to those present at Sherwood, which is also something that NPS school officials in charge of reassignments most certainly would have known.  Thus, the decision-makers who reassigned Jordan to Lindenwood did so with full knowledge that she had serious health problems that made working in a "sick building" unsafe and dangerous, and they deliberately sent Jordan into another hazardous environment despite knowing that this was an unsafe choice for Jordan and that she was the most qualified individual to send to Richard Bowling.

27.    The same day that Jordan learned of her reassignment to Lindenwood, she emailed (Exhibit P) school officials and protested the decision to send her to Lindenwood instead of Richard Bowling.

28.    At all times relevant to the issues in this matter, NPS officials, including the entire School Board membership, were aware that Lindenwood was in terrible condition, and there was consideration of closing the school.  A sample of photographs showing the awful conditions at Lindenwood is attached collectively as Exhibit Q.

29.    Later in August, 2021, after her reassignment to Lindenwood, Jordan was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), which was caused at least in part by the manner in which NPS officials treated her as described herein. Her PTSD affected major life functions.

30.    Before and during Jordan's reassignment to Lindenwood, the building leaked and was plagued with mold, pest infestation and other problems that made it environmentally hazardous and particularly dangerous to someone with Jordan's respiratory conditions and problems.

31. Jordan provided the EEOC with voluminous information and evidence in support of her Charge of Discrimination.  Her evidence demonstrates that Jordan: (a) has one or more qualifying disabilities, (b) is qualified to perform her job, (c) has been denied any good faith interactive process, (d) has been denied reasonable accommodations, (e) is the victim of unlawful retaliation, and (f) has suffered and continues to suffer unlawful discrimination.

32. There was no reason provided for the decision to send Jordan to Lindenwood instead of Richard Bowling, and the evidence strongly indicates that the decision was driven by discriminatory and retaliatory motives.  Tellingly, NPS officials refused to discuss Jordan's request to be reassigned to Richard Bowling and refused to engage in the required interactive process throughout her efforts to obtain reasonable accommodations.

33. The individual selected to become the Principal at Richard Bowling (instead of Jordan) resigned after approximately three months in that position. However, instead of offering Jordan the opportunity to transfer to Richard Bowling in accordance with her many requests, NPS selected someone else, and this person was once again an individual with inferior qualifications. By their conduct and decisions, NPS officials made it clear that they would not accommodate Jordan and wanted her to quit, and this attitude by NPS officials continues to this day.

34. On January 4, 2022, the EEOC issued Jordan a "Dismissal and Notice of Rights" (Exhibit R) advising Jordan, *inter alia*, that she may proceed with litigation based on the claims identified in her Charge of Discrimination.

35. Defendants and their decision-makers continue to deny reasonable accommodations to Jordan, have exhibited a mean-spirited determination to keep her out of any suitable Principal position, and have denied her leave, benefits and opportunities to which she is entitled.

36. The unlawful discrimination, refusal to engage in the interactive process in good faith, refused to accommodate Jordan, and retaliation against Jordan remain ongoing, unresolved, have damaged Jordan, and continue to cause Jordan damages.

### COUNT I - VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

37. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

38. Because defendants have violated and remain in violation of the Americans with Disabilities Act, and because Jordan has suffered and continues to suffer damages caused by such unlawful discrimination and retaliation, Jordan is entitled to relief provided by the ADA, including injunctive relief, reinstatement, back pay, compensatory damages and attorney's fees.

### COUNT II - VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

39. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

40. Defendant is an "employer" pursuant to Code of Virginia §2.2-3905.1(A) and other applicable provisions of law.

41. Defendant unlawfully discriminated against Jordan on the basis of her disability and unlawfully retaliated against Jordan as shown by the facts stated above.

42. Defendant discriminated against Jordan, refused to provide her with reasonable accommodations and unlawfully retaliated against Jordan in violation of Code §2.2-3905.1(B).

43. Jordan has fulfilled and complied with all administrative requirements for pursuing her state law disability and retaliation claims, and pursuant to Code §2.2-3908, Jordan is entitled to pursue a civil action against defendant, and pursuant to Code §2.2-3908(B), Jordan may pursue compensatory damages, attorney's fees and costs, injunctive relief, and "such affirmative action as may be appropriate" under the circumstances of this matter.

## COUNT III - VIOLATION OF CODE OF VIRGINIA §40.1-27.3

44. Paragraphs 1 through 36 are realleged and incorporated herein by reference.

45. In approximately February 2021, Jordan notified NPS supervisors of dangerous conditions in existence at Sherwood Forest Elementary School. For example, she informed supervisors of the existence of rats, mold and asbestos, which constituted dangerous and unhealthy conditions that defendants were obligated to address and remediate promptly in accordance with state and federal law. She also made the same or similar complaints to state officials, and this was known to NPS officials.

46. However, instead of making good faith efforts to address and remedy the problems identified by Jordan, defendant denied the existence of problems, and in the months that followed, defendant retaliated against Jordan by denying her reasonable accommodations, refusing to transfer Jordan to an appropriate school (such as Richard

Bowling) despite the availability of a Principal position in at least one location that would have been a good fit for Jordan, and otherwise taking steps to make sure that Jordan would be unable to return as a Principal.

47. Further, defendant ignored or disregarded vast quantities of information provided by Jordan and refused to provide her with basic due process in her efforts to plead her case for remediation of dangerous workplace conditions. Further, defendant ignored or disregarded Jordan's reasonable request for transfer to an appropriate position at an appropriate school within NPS. Instead, defendant retaliated against Jordan by reassigning her to another "sick building" school, Lindenwood.

48. As a result of retaliation suffered by Jordan, she has sustained damages and her damages remain ongoing.

49. The conduct of the defendants violates Code of Virginia §40.1-27.3(A)(1).

50. Accordingly, Jordan is entitled to relief pursuant to Code §40.1-27.3(C), to include injunctive relief, reinstatement, compensatory damages, attorney's fees and costs, and interest.

WHEREFORE, for the foregoing reasons, plaintiff Cheryl R. Jordan respectfully requests that this Honorable Court grant Jordan judgment against defendants and award her the following relief:

A. Pursuant to Count I, compensatory damages up to the sum of $300,000.00, injunctive relief to prevent and restrain further violations by defendants, and an award of reasonable attorney's fees and costs, and such other and further relief as allowable under applicable law; and

  B. Pursuant to Count II, compensatory damages up to the sum of $750,000.00, injunctive relief to prevent and restrain further violations by defendants, and an award of reasonable attorney's fees and costs, and such other and further relief as allowable under applicable law; and

  C. Pursuant to Count III, compensatory damages up to the sum of $750,000.00, injunctive relief to prevent and restrain further violations by defendants, reinstatement to an appropriate position at an appropriate location, and an award of reasonable attorney's fees and costs, and such other and further relief as allowable under applicable law; and

  D. An award of pre-judgment and post-judgment interest and such other and further relief as allowable as a matter of law and equity.

  Trial by jury is demanded as to all issues that a jury may determine.

          CHERYL R. JORDAN



        By_____/s/_____
           Of Counsel

Kevin E. Martingayle, Esquire (VSB #33865)
BISCHOFF MARTINGAYLE, P.C.
3704 Pacific Avenue, Suite 300
Virginia Beach, VA 23451
(757) 233-9991
(757) 416-6009 (direct dial)
(757) 428-6982 (facsimile)
Email: martingayle@bischoffmartingayle.com

## **CERTIFICATE**

I hereby certify that on this 12th day of May, 2022, a true copy of the foregoing was sent via the CM/ECF system to Kristopher McClellan, Esq. and Bonnie P. Lane, Esq.

_____/s/_____
Kevin E. Martingayle