UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHEYRL R. JORDAN,

        Plaintiff,

    v.                            CIVIL NO. 2:22cv167

SCHOOL BOARD OF THE CITY OF NORFOLK,
d/b/a NORFOLK PUBLIC SCHOOLS

        Defendant.

## OPINION

This matter comes before the court on Defendant's Motion to Dismiss for Failure to State a Claim ("Motion"). ECF No. 8. For the following reasons, the Motion is **GRANTED** in part, and **DENIED** in part.

### I. PROCEDURAL HISTORY

Plaintiff filed her Complaint in the Circuit Court for the City of Norfolk on March 30, 2022, alleging that Defendant discriminated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (Count One); the Virginia Human Rights Act, § 2.2-3905.1(B) (Count Two); and Section 40.1-27.3 of the Code of Virginia (Count Three). See ECF No. 1, Ex. 1. Defendant timely filed a notice of removal on April 22, 2022, id., and moved to dismiss Plaintiff's claims for failure to state a claim on April 29, 2022. ECF No. 5.

In response, on May 12, 2022, Plaintiff filed her First Amended Complaint ("Amended Complaint"). ECF No. 7. The Amended Complaint alleged the same three claims and was filed with eighteen (18) supporting exhibits. Id. Defendant filed its Motion, ECF No. 8, along with a Memorandum In Support, ECF No. 9, on May 26, 2022. Plaintiff responded on June 8, 2022, ECF No. 10, and Defendant replied on June 14, 2022, ECF No. 11. Defendant also filed a Request for Hearing on the Motion along with its Reply. ECF No. 12.

The court concludes that a hearing is unnecessary as the parties' submissions adequately present the issues and additional argument would not aid the decision process. See Fed. R. Civ. P. 78; Local Civ. R. 7(J). Accordingly, having been fully briefed, the Motion is now ripe for judicial determination.

## II. LEGAL STANDARD

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To meet the pleading standard established in Rule 8 of the Federal Rules of Civil Procedure and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has factual plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (collecting cases). A court may also "consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Vol. Fire. Dept., Inc. v. Montgomery Cnty., Md., 684 F.3d 462, 467 (4th Cir. 2012). However, "courts need not accept a complaint's legal conclusions," ACA Fin. Guar. Corp v. City of Buena Vista, Va., 917 F.3d 206, 212 (4th Cir. 2019) (citing Iqbal, 556 U.S. at 678), as Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," see Iqbal, 556 U.S. at 678-79.

### III. FACTUAL BACKGROUND

The court draws the following facts from the Amended Complaint and accompanying exhibits, which it accepts as true for the purposes of ruling on the instant motion.[1] During the time period in question, Plaintiff was employed as a principal by Norfolk Public Schools ("NPS"), which is overseen by Defendant, the School

---

[1] Plaintiff bases her three claims on the same set of operative facts. See Am. Compl. ¶¶ 37, 39, 44.

Board of the City of Norfolk ("School Board"). Am. Compl.
¶¶ 2-4, 6. As principal, Plaintiff's job duties included numerous
supervisory, managerial, and administrative tasks. Id. at ¶ 7.
None of the duties identified specifically required Plaintiff to
be physically present at the school she served as principal. Id.

From roughly March 2020 through March 2021, "NPS
conducted 100% virtual learning . . . ." Id. at ¶ 8. During this
time, Plaintiff served as the principal of Sherwood Forest
Elementary School ("Sherwood Forest") and "performed most of her
duties while working remotely . . . ." Id. "[S]he received positive
performance evaluations" during this virtual learning period. Id.

Around November 12, 2020, Plaintiff provided an unknown NPS
employee with a note from a physician, which read as follows:

> This is to confirm that [Plaintiff] is followed in our
> office for asthma. Symptoms are exacerbated by
> environmental exposures specifically at place of
> employment. Encourage mediation of environmental hazards
> such as mold or animal/insect infestations as
> appropriate. Failing this, the patient would benefit for
> accommodations such as remote work as feasible.

Id. at ¶ 9, Ex. 2. Four days later, Plaintiff contacted unnamed
NPS officials, advising them "that she was suffering from
'restrictive lung disease' and asthma, and further advised that
the Sherwood Forest school building was making [her] sick." Id. at
¶ 10.[2]

---

[2] Plaintiff describes these officials as "appropriate NPS
school officials." Am. Compl. ¶ 10. Whether or not these officials

Plaintiff next contacted NPS officials to address her concerns on November 30, 2020. Id. at ¶ 11. Specifically, she emailed Dandrige Billups, NPS's Chief Human Resources Officer,[3] advising him that she "was diagnosed with occupational asthma and mild restrictive lung disease."[4] Id., Ex. 3. In the message, she also explained that she "look[ed] forward to speaking" about "the [i]nteractive ADA Process" Billups had discussed with Plaintiff the previous week. Id.

An NPS representative was assigned to begin the ADA interactive process with Plaintiff on December 2, 2020. Id. at ¶ 12. Plaintiff subsequently received ADA request forms from NPS. Id. On December 7, 2020, Plaintiff provided Defendant with a note from a physician indicating that Plaintiff was unable to work from December 8 through December 11, 2020, due to "anxiety, major depressive disorder and asthma." Id. at ¶ 13.

---

were the "appropriate" ones to contact for notification purposes is ultimately a question of law. Plaintiff does not name these officials or provide their titles, rendering her characterization of them as the "appropriate" ones to contact a legal conclusion unsupported by the facts pled, and unentitled to any presumption of truth.

[3] This is the title associated with Billups in a different letter, Am. Comp. Ex. 6, and the title he uses in his April 30, 2021, email, see id. Ex. 8.

[4] Although her message indicates that she sent notes from medical providers as attachments, she did not submit those documents. Id.

Plaintiff completed and returned an Accommodation Request Form to Defendant on December 30, 2020. Id. at ¶ 14, Ex. 4. In the form, Plaintiff advised Defendant that she was unable to "[w]ork physically in [Sherwood Forest] due to environmental asthma and allergy triggers." Id., Ex. 4. Plaintiff explained that her inability to work in the building was due to her "severe asthma, sick building syndrome, [and] mild restrictive lung disease." Id. At that time, Plaintiff also requested two accommodations "to enable [her] to perform the essential function(s) of [her] job:" (1) "Telework during the 6-month period of new treatment," and (2) a "[m]odified schedule for appointments, asthmatic episodes, and treatments." Id. She requested these accommodations from January 3, 2021, through June 30, 2021. Id. At some point, Plaintiff also "executed forms allowing NPS to access her medical records to support her claims and her requests for accommodation." Id. at ¶ 14. In January 2021, Plaintiff provided NPS officials[5] "with notes from several of her healthcare providers . . . supporting [her] request to work remotely." Id. at ¶ 15, Ex. 5.

Amanda Schilling, a Human Resources Specialist with NPS, sent Plaintiff a letter dated February 11, 2021, denying Plaintiff's request to work remotely and addressing Plaintiff's request for a

---

[5] Plaintiff once again refers to these officials as the "appropriate" ones, without any explanation of who the officials are or what roles they filled at the relevant time. See supra note 2.

schedule modification. Id. at ¶ 16, Ex. 6. In the letter, Schilling explained that the "essential functions of an elementary school principal, including broad responsibility for all educational, operational, and environmental functions of the school building, require that the principal perform these functions in their assigned school building." Id., Ex. 6. Schilling also advised Plaintiff that "Defendant has performed extensive remediation of environmental factors and general capital improvement projects at [Sherwood Forest]," and that Defendant was "willing to provide [Plaintiff] with an appropriate air purifier for [her] workspace (i.e. office) at the school at [Defendant's] expense." Id., Ex. 6. In Defendant's view, "[t]hese accommodations address[ed] [Plaintiff's] physician's concerns and should [have] allow[ed] [Plaintiff] to perform the essential functions of [her] job." Id.

As for the schedule-modification request, the letter directed Plaintiff to "complete the appropriate Family Medical Leave Act (FMLA) request" for "intermittent leave." Id. Schilling explained Plaintiff could "work with" her "to meet this requirement." Id. Schilling also explained that Plaintiff should "not hesitate to contact" her with any questions concerning her accommodations or Defendant's response. Id. Billups and Dr. Dorthea White, Executive Director of Schools, were copied on the letter. Id.

Plaintiff responded by email on February 12, 2021, asking to "appeal the decision," and raising issues with Defendant's

decision-making process. Id. at ¶ 17, Ex. 7. Specifically, Plaintiff complained that nobody from NPS called her to involve Plaintiff in the process. Id., Ex. 7. Plaintiff complained that Defendant's remediation at Sherwood Forest did not correct the environmental factors triggering Plaintiff's "asthma and other health issues" and emphasized that she had been able to perform her job remotely while instruction remained virtual, arguing that she could continue to perform her job functions remotely. Id. Plaintiff ultimately requested that Defendant "reconsider [its] decision and allow [Plaintiff] to remain virtual, as [she] receive[d] the necessary treatment for [her] stated disabilities." Id.

On May 3, 2021, Plaintiff emailed Billups requesting to transfer to a school other than Sherwood Forest and noting that she anticipated a "return date of June 14, 2021, with no restrictions." Id. at ¶ 18, Ex. 8. On June 2, 2021, NPS announced that there was an opening for the position of principal at Richard Bolling Elementary School ("Richard Bolling"). Id. at ¶ 19, Ex. 9. Plaintiff alleges that Richard Bowling is a newer building than Sherwood Forest and, therefore, does not have the same "environmental problems" that were enflaming her asthma and other health issues. Id. at ¶ 20.

Plaintiff's request for transfer was ultimately denied by Defendant July 2, 2021. Id., Ex. 10 at 1. Accordingly, Plaintiff

8

returned to work at Sherwood Forest on June 14, 2022. Id., Ex. 10 at 3. After her return to Sherwood Forest, Plaintiff promptly "suffered a medical setback" and "was required to use an inhaler, nebulizer and to take prescribed medications," none of which "were necessary two months prior to returning to Sherwood Forest." Id.

"After being ignored for periods of time and receiving no meaningful ADA accommodations," on July 4, 2021, Plaintiff emailed Dr. Sharon Byrdsong, the Superintendent of NPS, to express her concerns, and copied various other NPS employees Plaintiff identified as members of the NPS School Board. Id. at ¶ 21, Ex. 10. In the message, Plaintiff outlined the timeline of multiple meetings and communications that she had with NPS representatives, including Meetings with White and Dr. Lynell Gibson, NPS Chief of Schools, on June 21, 2021. Id., Ex. 10 at 3. She noted that one of her requests for reassignment was forwarded to Billups on June 21. Id. When Billups did not respond to this forwarded request, Plaintiff informed Billups by email on June 24, 2021, that she continued to experience medical problems at Sherwood Forest despite the air scrubber and air purifier in her office, which were implemented by NPS, see id. Ex. 6, in response to Plaintiff's Accommodation Request Form, see id., Ex. 4. Billups responded to her request on July 2, 2021, explaining that her request for reassignment was being denied pursuant to NPS policy. Id., Ex. 10 at 3-4. Plaintiff then concluded her email to Byrdsong reviewing

these events by asking that the superintendent "reconsider [her] request to be reassigned to another building with a healthy and safe environment." Id., Ex. 10 at 4.

"Later in July," Plaintiff sent letters from two of her doctors to NPS officials. Id. at ¶ 22. One doctor explained that working at Sherwood Forest was "contributing exorbitantly to her lack of asthma control," and her condition "has required [the] use of a variety of asthma therapies . . . ." Id., Ex. 11 at 1. He explained that because of the conditions at Sherwood Forest, he recommended that Defendant "move [Plaintiff] to a different school with acceptable levels of cleanliness-hygiene." Id. The second doctor similarly believed that the conditions at Sherwood Forest were exacerbating her asthma and recommended reassignment. Id., Ex. 11 at 2.

On August 9, 2021, Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶ 23, Ex. 12. She alleged discrimination based on "retaliation" and "disability," and provided the following facts:

> I began employment for Respondent on or about 1997 and became a Principal in July 2007. I have always met or exceeded my performance expectations. On or about November 2020, I informed Dr. White, Executive Director, that I was diagnosed with a medical condition that affected a major life function. Dr. White shared my diagnosis with Mr. Buillups [sic], Chief of HR. In February 2021, I requested to work from home as an accommodation. On February 11, 2021, I was denied my request and was informed that Respondent was willing to provide an appropriate air purified [sic] for my

10

workspace. I sent an appeal with photographs of the
school and expressed my concerns that I could not walk
around the school without being exposed to harsh air
conditions that affected my medical condition. My appeal
was ignored. After my appeal was ignored, my doctor
completed FMLA paperwork and was forced out on FMLA from
March 1, 2021 - June 11, 2021.

I then requested to be reassigned or transferred to an
available position within the city. I was aware of
several positions that were open or were expected to
become available soon. My request was again denied. I
was forced to return to the building on June 14. 2021
and have subsequently been subjected to further harm and
continue to become ill due to my employer's negligence.
Although Respondent placed one Air Purifier In my
office, this attempt to accommodate my request was
ineffective, therefore I was forced to place an
additional purifier in my office in attempt to preserve
my health. I have made attempts to address the
ineffectiveness of the accommodation set as well as
other issues with my employer, to include sending an
email to board members and the superintendent. My
Pulmonary Specialist and Allergy & Asthma Specialist
also sent letters to the Superintendent requesting my
reassignment to another school without the environmental
concerns. These efforts have fallen on deaf earns [sic]
and I continue to suffer adverse health effects due to
my working conditions. I believe I was denied an
effective reasonable accommodation, in retaliation for
participating in protected activity, In violation of the
Americans with Disabilities Act of 1990, as amended.

Id., Ex. 12 at 1-2.

Within her Charge of Discrimination form, Plaintiff directed

that the charge be presented to the EEOC, yet designated her desire

that the charge be "filed with both the EEOC and the State or local

Agency." Id., Ex. 12 at 1. On August 11, 2021, Plaintiff received

notice from the Virginia Office of Civil Rights, acknowledging

receipt of the charge, advising that "[p]ursuant to the work

sharing agreement, the Norfolk Local Office [of the EEOC] will investigate" the charge, while the Virginia Office of Civil Rights "intends to [d]efer [i]nvestigation." Id., Ex. 13.

On August 10, 2021, Plaintiff emailed Billups, Gibson, and White, to reiterate her request to be transferred to another school. Id. at ¶ 24, Ex. 14. This time, Plaintiff specifically requested to be transferred to Richard Bolling, noting that it "is a fairly new school and should provide [Plaintiff] a safe and healthy environment; thus preventing recurrent asthmatic episodes." Id. On August 17, 2021, Plaintiff was notified by Billups that she had been reassigned to Lindenwood Elementary School ("Lindenwood"). Id. at ¶ 25, Ex. 15. The same day, Plaintiff responded, protesting the fact that she had not been assigned instead to Richard Bolling. Id. at ¶ 27, Ex. 16. Plaintiff alleges that the Lindenwood building, like Sherwood Forest, "leaked and was plagued with mold, pest infestation and other problems" such that it was "particularly dangerous to someone with [Plaintiff's] respiratory conditions and problems." Id. at ¶ 30, Ex. 17.

On January 4, 2022, the EEOC issued a "Dismissal and Notice of Rights" regarding Plaintiff's case. Id. at ¶ 34, Ex. 18. According to the notice, the EEOC closed its file on Plaintiff's case without making a determination of the merits of the claim. Id. Further, the notice advised Plaintiff that she had a "right to sue" under the ADA (among other federal anti-discrimination

statutes) and that a lawsuit under such provisions must be filed within ninety (90) days of the notice. Id. Eighty-five (85) days later, Plaintiff then filed her Complaint in the Circuit Court for the City of Norfolk on March 30, 2022, alleging violations of the ADA, VHRA, and Code of Virginia. See ECF No 1, Ex. 1.

## IV. ANALYSIS

### Count One – Violations of the Americans with Disabilities Act

The ADA prohibits employers with fifteen (15) or more employees, 42 U.S.C. § 12111(5)(A), from discriminating against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment," 42 U.S.C. § 12112(a). By its terms, the ADA proscribes a wide array of potentially unlawful discrimination. Id. § 12112(b).

Plaintiff's threadbare pleading does little to clarify which aspect of the ADA she alleges Defendant violated. Plaintiff simply states that, based on the facts pled, "defendants have violated and remain in violation of the [ADA], and because [Plaintiff] has suffered and continues to suffer damages caused by such unlawful discrimination and retaliation, [she] is entitled to relief provided by the ADA, including injunctive relief, reinstatement, back pay, compensatory damages and attorney's fees." Am. Compl. ¶ 38. Despite the expansive array of potential ADA claims, "a

district court has jurisdiction to consider only those claims that were administratively exhausted before the EEOC." Wright v. Williamsburg Area Med. Assistance Corp., No. 4:12-cv-52, 2014 WL 1056719, at *1 (E.D. Va. Mar. 18, 2014) (Smith, C.J.) (citing Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009)).

As stated in the Factual Background, Plaintiff filed a Charge of Discrimination with the EEOC on August 9, 2021. Id. at ¶ 23, Ex. 12. In that charge, Plaintiff specifically alleged: "I was denied an effective reasonable accommodation, in retaliation for participating in protected activity, in violation of the [ADA]." Id. Thus, based on Plaintiff's pleading and EEOC Charge of Discrimination filing, the court construes the Amended Complaint to allege two violations of the ADA: failure to provide reasonable accommodations, in violation of 42 U.S.C. § 12112(b)(5)(A), and retaliation, in violation of 42 U.S.C. § 12203(a).

### A. Failure to Provide Reasonable Accommodations

Discrimination prohibited by the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(a)).

> To show an employer's failure to accommodate, the plaintiff must prove: (1) that she had a disability within the statutory meaning; (2) that the employer knew

14

of her disability; (3) that a reasonable accommodation would permit her to perform the essential function of the position; and (4) that the employer refused to make the accommodation.

Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 959 (4th Cir. 2021) (citing Wilson, 717 F.3d at 345).

## 1. Plaintiff's Disability

Under the ADA, "disability" includes "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C. § 12102(1)(A). The operation of an individual's respiratory system constitutes a "major life activity." See 29 C.F.R. § 1630.2(i)(1)(ii). "Substantially limits" must "be construed broadly in favor of expansive coverage," and "is not meant to be a demanding standard. See 29 C.F.R. § 1630.2(j)(1)(i). See also, Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014) ("Congress instructed that the term "substantially limits" be interpreted consistently with the liberalized purposes of the [ADA].").

Plaintiff has alleged that she suffers "from 'restrictive lung disease' and asthma." Am. Compl. ¶ 38. Such physical impairments may substantially limit an individual's respiratory system within the meaning of 42 U.S.C. § 12102(1)(A) and 29 C.F.R. § 1630.2(j)(1)(i). Plaintiff has further alleged that these impairments were enflamed by various environmental hazards at Sherwood Forest. Am. Compl. ¶ 9. Therefore, Plaintiff has

15

plausibly alleged that she has a qualifying disability under the ADA.

## 2. Defendant's Knowledge of Disability

At this stage in the proceedings, there is no question that Plaintiff has met her burden to adequately plead that Defendant was aware of her disability. Plaintiff alleged that she and her doctors contacted NPS school officials several times in November 2020 to notify them of her "restrictive lung condition" and "occupational asthma." Am. Compl. ¶ 9–11. Plaintiff alleged that, on December 30, 2020, she submitted an Accommodation Request Form to Defendant, outlining her medical condition as "severe asthma, sick building syndrome, [and] mild restrictive lung disease." Id. at ¶ 14, Ex. 4. Finally, Plaintiff submitted documentation of Defendant's acknowledgement of the notices of her disability, including the February 11, 2021, response to her Accommodation Request Form. Id., Ex. 6. Therefore, Plaintiff has plausibly alleged that Defendant had knowledge of her disability.

## 3. Plaintiff's Ability to Perform with Accommodation

A reasonable accommodation includes a "[m]odification[] or adjustment[] to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." Perdue, 999 F.3d at 959 (quoting 29 C.F.R.

16

§ 1630.2(o)(1)(ii)). The ADA provides a non-exhaustive list of examples of reasonable accommodations, which includes:

> "[J]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, [or] other similar accommodations for individuals with disabilities."

Section 12111(9)(B); see also 29 C.F.R. § 1630.2(o)(2)(ii).

Plaintiff must not only allege that a reasonable accommodation was available, but that the proposed accommodation would allow Plaintiff to perform the essential functions of the position. See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 580 (4th Cir. 2015) ("An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of her position.").

The facts alleged describe that Plaintiff made two different requests for accommodation. First, Plaintiff's request for remote work and schedule modifications from January 3 through June 30, 2021. Am. Compl. ¶ 14, Ex. 4. Second, Plaintiff's request to be transferred to a new school, as principal.[6] Id. at ¶ 18, Ex. 8. The second request was re-initiated on July 4, 2021, id.

---

[6] Plaintiff's request to be transferred to a new school was in place of, rather than in addition to, her request to work remotely.

¶ 21, Ex. 4, and specified as a request to be transferred to Richard Bolling on August 10, 2021, id. ¶ 24, Ex. 14.

Defendant argues that working remotely would not allow Plaintiff to perform all of the essential functions of a principal, which include various administrative and supervisory responsibilities. ECF No. 9 at 9; Am. Compl. at ¶ 7. Plaintiff disagrees, arguing that, since she was able to act as principal of Sherwood Forest during its period of remote learning, she could continue to perform all the essential function of principal, remotely, even after the school returned to a traditional, in-person learning environment. Am. Compl. at ¶ 8; ECF No. 10 at 13. Plaintiff's Amended Complaint also alleges that nothing in the official job description of principal explicitly indicates that in-person attendance is required. Am. Compl. at ¶ 7, Ex. 9. See 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."); see also Jacobs, 780 F.3d at 579 (discussing various factors to identify the essential functions of a job). Although support for Plaintiff's claim here is limited, at this early juncture, drawing all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has sufficiently alleged that remote work could allow her to perform all essential functions of principal.

Regarding Plaintiff's second accommodation request, Plaintiff alleged that transfer to a school with a "safe and healthy environment" would "prevent[] recurrent asthmatic episodes." Id. at ¶ 24, Ex. 14. Plaintiff further alleged that, at the time of her request for accommodation, there was a vacant position for principal at Richard Bolling which met these needs. Id. ¶ 19-20, Ex. 9. Defendant does not challenge that Plaintiff would be capable of performing all the essential functions of principal if assigned to Richard Bolling.[7] Therefore, Plaintiff has sufficiently alleged that transfer to a school without environmental hazards would allow Plaintiff to perform all essential functions of the job.

## 4. Refusal to Make Accommodation

Plaintiff has alleged and Defendant does not deny that her request to work remotely was denied. Am. Compl. ¶ 16, Ex. 6. Rather, the parties disagree as to whether Plaintiff's transfer to Lindenwood rather than Richard Bolling constitutes a denial of her request for reasonable accommodation via a transfer to a working environment without the same "environmental problems" that plagued Sherwood Forest. Id. ¶ 20.

Defendant argues that the ADA does not require it to "grant an employee's every wish." ECF No. 9 at 11. Instead, Defendant

---

[7] Defendant merely argues that Plaintiff's re-assignment as principal of Lindenwood satisfies her request for reasonable accommodation via reassignment to another school. This argument is addressed in detail supra Part IV.A.4.

argues that the ADA allows an employer to "reasonably accommodate
an employee without providing the exact accommodation that the
employee requested." Id. (quoting Murphy v. Cty. Of New Hanover,
No. 21-1471, 2021 WL 4704780, at *1 (4th Cir. Oct., 8 2021)).
Plaintiff emphasizes in response that Lindenwood had similar
environmental hazards as Sherwood Forest, ECF No. 9 ¶ 30, Ex. 17,
while there was a vacant position at Richard Bolling, a building
without such environmental hazards, id. ¶ 24, Ex. 14. Plaintiff
has thus sufficiently alleged, at this early stage of litigation,
that considering the environmental condition of Lindenwood versus
Richard Bolling, Plaintiff's transfer to Lindenwood was not a
reasonable accommodation. As such, her request was effectively
denied.

Further, Plaintiff has alleged that throughout the process,
Defendant has not met the ADA's requirement that they engage in an
interactive process. See Haneke v. Mid-Atl. Cap. Mgmt., 131 F.
App'x 399, 400 (4th Cir. 2005) ("Implicit in the fourth element is
the ADA requirement that the employer and employee engage in an
interactive process to identify a reasonable accommodation.")
(citing 29 C.F.R. § 1630.2(o)(3)). While the court agrees with
Defendant's assertion that "the exhibits to the [] Amended
Complaint demonstrate that Defendant did engage in an interactive
process with [Plaintiff]," to an extent, ECF No. 9 at n.5,
Plaintiff has particularly alleged that, after her appeal of the

reassignment to Lindenwood, "[t]here was no reason provided for the decision" and that "NPS officials refused to discuss" Plaintiff's reassignment request further. Am. Compl. ¶ 32.

Plaintiff's protest of the adequacy of her reassignment location is a key point in the interactive accommodation process. Therefore, Plaintiff has sufficiently alleged at this stage that, at least to some extent, Defendant failed to engage in the interactive process required by the ADA. See Haneke, 131 F. App'x at 400.

## B. Retaliation

The ADA prohibits retaliation "against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). "In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Either method requires Plaintiff to show "(i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her." Jacobs, 780 F.3d at 577 (citing Rhoads, 257 F.3d); see also Thompson v. City of Charlotte, 827 Fed.Appx. 277, 279 (4th Cir. 2020).

21

## 1. Protected Activity

Protected activity under the ADA includes filing an EEOC complaint, Coursey v. Univ. of Md. E. Shore, 577 Fed.Appx. 167, 176 (4th Cir. 2014), and submitting a request for accommodation, Jacobs, 780 F.3d at 577; Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001). In establishing protected activity, Plaintiff is not required to prove that the opposed conduct was actually an ADA violation, but merely that there was "a reasonable, good faith belief" that the conduct violated the ADA. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002).

In this case, Plaintiff has alleged that she engaged in two types of protected activity: (1) requesting accommodations for her disability, see supra Part IV.A.; and (2) filing an EEOC charge against Defendant, Am. Compl. ¶ 23, Ex. 12. Therefore, Plaintiff has plausibly alleged that she engaged in protected activity for purposes of Section 12203(a).

## 2. Retaliatory Action

To show that there has been a retaliatory action in response to Plaintiff's protected activity, Plaintiff must allege that the action was "materially adverse" to the extent that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Laird v. Fairfax Cty., Va., 978 F.3d 887, 893 (4th Cir. 2020) (quoting Burlington N. and Santa Fe

Ry. Co. v. White, 548 U.S. 53, 68 (2006)). A materially adverse action is one that subjects Plaintiff to a "significant detriment," not merely a "relatively insubstantial" or "trivial" harm. Adams v. Anne Arundel Cty. Pub. Schs., 789 F.3d 422, 431 (4th Cir. 2015) (quoting Burlington, 548 U.S. at 68).

Plaintiff alleged that Defendant's retaliatory action was the decision to assign her to Lindenwood while an equivalent position at Richard Bolling was still vacant. Am. Compl. ¶ 26. Further, Plaintiff alleges that, at the time of the reassignment, Defendant was aware that Richard Bolling did not pose environmental risks to her asthma, id. ¶ 20, while Lindenwood's "terrible condition" surely would, id. ¶ 28, Ex. Q. That Defendant had knowledge of the environmental hazards at Lindenwood is a question of law and thus Plaintiff's conclusory statement is not entitled to a presumption of truth at this stage. However, a reasonable inference may be drawn that a School Board has knowledge of the condition of the school buildings within their district. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).

Plaintiff's reassignment to a school with environmental hazards is, in some sense, not a substantial change in position, given that Plaintiff's previous place of employment had the same environmental impact on her asthma. However, it is plausible that Defendant's choice to reassign Plaintiff to Lindenwood instead of Richard Bolling effectively foreclosed Plaintiff's opportunity to

23

work in a safe and healthy environment within NPS' district. Further, the decision allegedly exasperated Plaintiff's mental fatigue, resulting in a diagnosis of PTSD. Am. Compl. ¶ 29.

Therefore, Plaintiff has sufficiently made a showing that her reassignment to Lindenwood amounts to a "significant detriment" which could "dissuade a reasonable worker from making or supporting a charge of discrimination." Laird, 978 F.3d at 893 (quoting Burlington, 548 U.S. at 68).

### 3. Causal Connection

For an ADA retaliation claim, a plaintiff may establish a causal connection between her protected activity and the corresponding alleged retaliatory action through both direct and indirect evidence. Jacobs, 780 F.3d at 572, 577. Temporal proximity between the events is a relevant consideration at this stage. Id. at 579. See also, Coursey, 577 Fed.Appx. at 175 (finding that a seven-month period between protected activity and retaliation "supports an inference of [a] retaliatory motive").

Plaintiff filed her charge with the EEOC on August 9, 2021. Am. Compl. ¶ 23. After several earlier requests, Plaintiff's most recent request for accommodation occurred on August 10, 2021, when she requested the transfer to Richard Bolling in particular. Id. ¶ 24, Ex. N. Just over a week after those events, on August 17, 2021, Plaintiff was notified that she had been transferred instead to Lindenwood. Id. ¶ 25. The temporal proximity

24

between the events thus supports the alleged causation. Further, Plaintiff alleges that Defendant refused to discuss its rationale for choosing the assignment to Lindenwood over Richard Bolling.[8] Id. ¶ 32. Considering these two facts, Plaintiff's allegations adequately support her claim that the reassignment was caused by her engaging in protected activity.

### Count Two – Violation of the VHRA

Plaintiff alleges that Defendant violated the VHRA by "discriminat[ing] against [her] on the basis of her disability and unlawfully retaliat[ing] against [her] . . . ." Am. Compl. ¶ 41. Plaintiff reiterates her claim by arguing that Defendant "discriminated against [her]" and "refused to provide her with reasonable accommodations and unlawfully retaliated against her in violation of [Va. Code Ann. § 2.2-3905.1(B)]." Id. ¶ 42.

The VHRA provides that employers may not "[r]efuse to make reasonable accommodation to the known physical and mental impairments of an otherwise qualified person with a disability, if necessary to assist such person in performing a particular job, unless the employer can demonstrate that the accommodation would impose an undue hardship on the employer." Va. Code Ann.

---

[8] Plaintiff's other support for causation, namely that Defendant knew of the environmental condition at Lindenwood and that the individual hired to the position of principal at Richard Bolling, are either questions of law or conclusory statements, not entitled to the presumption of truth at this stage.

§ 2.2-3905.1(B)(1). The VHRA also prohibits retaliating against employees who request reasonable accommodations by "denying employment or promotion opportunities," requiring such employees "to take leave if another reasonable accommodation can be provided to the known limitations related to the disability," § 2.2-3905.1(B)(2-4), or by failing to engage in an interactive process with the employee requesting an accommodation, § 2.2-3905.1(B)(5).

Section 2.2-3907 outlines the process by which "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice may file a complaint . . . with the Office of Civil Rights of the Department of Law (the Office)." Va. Code Ann. § 2.2-3907(A). Within the Office, the Division of Human Rights (FEPA) oversees the VHRA. Va. Code Ann. § 2.2-520(C)(2). Private citizens may only sue under the VHRA once they have "been provided a notice of [their] right to file a civil action pursuant to § 2.2-3907." Va. Code Ann. § 2.2-3908(A). Section 2.2-3907 specifies that, only "[u]pon receipt of a written request from the complainant," will FEPA "issue a notice of the right to file a civil action. . . ." Va. Code Ann. § 2.2-3907(H).

Defendant argues that Plaintiff's VHRA claim is procedurally defective because she has not received notice of a right to sue directly from FEPA, as required by § 2.2-3907(H). ECF No. 9 at 19-22. Plaintiff disagrees, arguing that the EEOC's

26

January 4, 2022, notice of her right to sue satisfied § 2.2-3907(H)'s requirements and triggered her right to sue under the VHRA. ECF No. 10 at 17. In support of this argument, Plaintiff points to the Fiscal Year 2021 Work-Sharing Agreement between FEPA and the EEOC.[9] ECF No. 10 at 16-17, Ex. 1 ("FEPA-EEOC Work-Sharing Agreement").

**A. Purpose and Effect of the FEPA-EEOC Work-Sharing Agreement**

Many states that have their own anti-discrimination laws have created so-called "work-sharing" agreements with the EEOC to "provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate [state] and Federal laws."[10] FEPA-EEOC Work-Sharing Agreement § I(B). The Commonwealth of Virginia, at least for a time, was one such "deferral state." See id.

As an initial matter, these work-sharing agreements operate to avoid the EEOC's statutory requirement that the Federal agency

---

[9] See Virginia Office of the Attorney General, Division of Human Rights, Work-Sharing Agreement for Fiscal Year 2021, https://www.oag.state.va.us/files/OCR/2020-10-02_Work-sharing-Agreement_EEOC-Va-OAG-OCR_FY-2021.pdf.

[10] See e.g., Vielma v. Eureka Co., 218 F.3d 458, 462 (5th Cir. 2000) (discussing the work-sharing agreement between the EEOC and the Texas Commission on Human Rights (TCHR)); EEOC v. Green, 76 F.3d 19, 20-21 (1st Cir. 1996) (discussing the work-sharing agreement between the EEOC and the Massachusetts Commission Against Discrimination (MCAD)); Petrelle v. Weirton Steel Corp., 953 F.2d 148, 153 (4th Cir. 1991) (discussing the work-sharing agreement between the EEOC and the West Virginia Human Rights Commission (WVHRC)).

defers its investigation while the appropriate state agency has a period of exclusive jurisdiction over the discrimination claim. See 42 U.S.C. § 2000e-5(c)[11] (providing that, where an alleged discriminatory employment practice has occurred in a state that has its own anti-discrimination laws, the state has sixty days of exclusive jurisdiction). Only after the sixty days have expired or the proceedings have been "earlier terminated" can the charge be filed with the EEOC. Id. The sixty-day period of exclusive jurisdiction is intended to "give States and localities an opportunity to combat discrimination free from premature federal intervention." EEOC v. Com. Off. Prods. Co., 486 U.S. 107, 110 (1988). As noted above, however, many states have waived this requirement for the sake of efficiency.

According to the FEPA-EEOC Work-Sharing Agreement, "FEPA waives its right of exclusive jurisdiction to initially process" charges originally received by the EEOC. See FEPA-EEOC Work-Sharing Agreement § III(A)(1). Accordingly, "the EEOC's receipt of charges on FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706(c) and (e)(1)." Id. at § II(A).

---

[11] Claims under the ADA must follow the same administrative procedures set forth in Title VII (42 U.S.C. § 2000e-5). See 42 U.S.C. § 12117(a).

Plaintiff thus argues that, because "[n]ormally, once an agency begins an investigation, it resolves the charge," see FEPA-EEOC Work-Sharing Agreement § II(C), these provisions indicate that the EEOC right-to-sue notification also served as FEPA's right-to-sue notification under the VHRA, see ECF No. 10 at 17. In response, Defendant argues that the "charges" referred to in § III(A)(1) relate only to those under Title VII, the ADA, and other federal anti-discrimination laws; they do not refer to charges brought under any state anti-discrimination law, such as the VHRA. ECF No. 11 at 12. Defendant also emphasizes that the FEPA-EEOC Work-Sharing Agreement expired on September 30, 2021, fifty-two (52) days after Plaintiff filed her Charge of Discrimination with the EEOC, Am. Compl., Ex. 12, but ninety-six (96) days before the EEOC issued the right-to-sue notification, Am. Compl., Ex. 20. ECF No. 11 at 18.

For the reasons stated below, the court **FINDS** that, even if the FEPA-EEOC Work-Sharing Agreement controlled the Plaintiff's entire claims process, the EEOC right-to-sue notification did not also serve as FEPA's right-to-sue notification.

### B. VHRA Procedural Requirements

As this court has recently noted, the VHRA was amended in 2021 to "expand and formalize" its strict remedial scheme. See Hice v. Mazzella Lifting Tech., Inc., No. 2:21-cv-281, 2022 WL 636640, at *11 (E.D. Va. March 4, 2022) (Smith, J.). In Hice,

29

this court found that a plaintiff may not "work around the structure, limitation, and remedies of the VHRA" by also bringing a common-law Bowman claim. Id. at *10. While this case turns on the procedural requirements of the VHRA rather than the preclusive effect of its causes of action, Hice's admonition applies with equal force here: "The VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and polices articulated in the Act." Id. at *11. Further, the fact that the VHRA was amended in July 2021, approximately half-way through the effective period of the FEPA-EEOC Work-sharing Agreement, strengthens the conclusion that the General Assembly intended the procedural requirements of Section 2.2-3907(H) to be exclusive of the ADA's procedure.

Accordingly, courts in Virginia have treated the two processes as separate. In Parikh-Chopra v. Strategic Mgmt. Servs., LLC, the defendant sought a copy of the plaintiff's Charge of Discrimination with the EEOC. CL 2021-0003051, 2021 WL 5863546, at *1 (Va. Cir. Court, Dec. 9, 2021). However, given that the plaintiff's claim was brought solely under the VHRA, the court denied the motion, pointing out that:

> [The defendant] conflate[d] the federal statute –
> 42 U.S.C. § 2000e-5 – authorizing the filing of
> administrative proceedings before either the EEOC or a
> state or local government authority with the limited
> procedures recognized under Virginia law. Only the
> presentment of claims and the exhaustion of the
> administrative remedies before the Virginia Attorney

General's Office of Civil Rights satisfy the prerequisite to filing a discrimination lawsuit in Virginia's state courts.

Id. at *2. Here too, Plaintiff conflates her satisfaction of the requirements of Section 2000e-5 with the separate requirement of the VHRA to meet the "limited procedures recognized under Virginia law." Id.

While this issue has not been squarely addressed in the Fourth Circuit, federal courts in other deferral states have viewed the issue similarly. In Vielma v. Eureka Co., 218 F.3d 458 (5th Cir. 2000), the plaintiff sued under the Texas Commission on Human Rights Act (TCHRA), alleging age and disability discrimination. Under the TCHRA, a plaintiff pursuing a claim must "request a written notice of her right to file a civil action," and only then may file her TCHRA claim. See Tex. Labor Code Ann. § 21.252, 254. The plaintiff in Vielma had received an EEOC right-to-sue notification prior to filing the TCHRA claim, yet she did not obtain a right-to-sue notification from the TCHR until after filing her state claim. Vielma, 218 F.3d at 461. On appeal, the defendant argued that the plaintiff's TCHRA claim was procedurally defective, relying on the argument that the EEOC right-to-sue notification did not satisfy the TCHRA's separate procedural requirements. Id. at 461.

Like FEPA, the TCHR had a work-sharing agreement with the EEOC at the time of the plaintiff's claim in Vielma. Id. at 462.

In fact, the text of TCHR's agreement with the EEOC is markedly similar to FEPA's. In particular, both the TCRA and the FEPA work-sharing agreements contain the following provision:

> The EEOC and the [state agency] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges.

Compare Vielma, 218 F.3d at 462 with FEPA-EEOC Work-sharing Agreement at § II.A. The Fifth Circuit in Vielma relied on this provision to determine that:

> The relevant inquiry. . . is defining the scope of the EEOC's agency for the [state agency] in this context, that is, whether in addition to receiving and processing complaints for the [state agency], the EEOC can also notify a complainant of her "right to file a civil action" under state law by issuing her a federal "right-to-sue" letter.

Vielma, 218 F.3d at 464. The Fifth Circuit ultimately held that the EEOC right-to-sue notification did not give the plaintiff the right to sue under state law. Id. Doing so, the court reasoned, would exceed the scope of authority delegated to the federal agency in the work-sharing agreement. Id.[12]

The Fifth Circuit held so, even though the language of the TCHRA was ambiguous as to the source of the right-to-sue notice. Vielma, 218 F.3d at 464-65; see Tex. Labor Code Ann. § 21.254

---

[12] The court went on to observe that its "conclusion also finds support in the fact that in the reverse situation, receipt of a [state agency] letter would not trigger the analogous EEOC ninety-day filing period." Vielma, 218 F.3d at 466.

("Within 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent.").[13] In contrast, the VHRA is not ambiguous on this matter. Section 2.2-3907 specifies that "*the Office* shall promptly issue a notice of the right to file a civil action. . . ." Va. Code Ann. § 2.2-3907 (emphasis added).[14]

The specificity of Section 2.2-3907 is instead more like another deferral state's anti-discrimination law: Missouri. See Mo. Rev. Stat. § 213.111 (". . . *the commission* shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action . . .") (emphasis added).[15] Yet, once again, courts analyzing Section 213.11 of the Missouri Human Rights Act (MHRA) have found the same result as the Fifth Circuit in Vielma. See Kelly v. Allied Healthcare Prods., Inc., No. 4:96-cv-1291 GFG, 1996 WL 787420 (M.D. Mo. Dec. 5, 1996). In Kelly, the court found that the plaintiff's state law discrimination claim was precluded because, although the plaintiff

_____

[13] Although not discussed in Vielma, a simple inference can also be made from the language of Section 21.252, which provides that a complainant may "request from *the commission* a written notice of the complainant's right to file a civil action." Tex. Labor Code Ann. § 21.252 (emphasis added).

[14] As noted above, "the Office" in this context refers to the Office of Civil Rights of the Department of Law – of which, FEPA is a section.

[15] There, "the commission" refers to the Missouri Commission on Human Rights (MCHR). See Mo. Rev. Stat. § 213.111(3).

had received a right-to-sue letter from the EEOC, Section 213.11 of the MHRA required a letter from the MCHR itself. Id. at *2 n.1.

Other federal courts have reached the same result by relying solely on an analysis of 42 U.S.C. § 2000e, which outlines the federal procedural requirements for an employee to bring a Title VII or ADA claim. See Oliver v. NY Tel. Co., No. 91-cv-179S, 1993 WL 173471, at *2 (W.D.N.Y. Mar. 31, 1993). In Oliver, the plaintiff challenged the dismissal of her state law claim by arguing that the statute of limitations did not begin until she received her right-to-sue notification from the EEOC. Id. The court rejected this argument and held that her state law claim was untimely. Id. at *4. In doing so, the court reasoned that the right-to-sue letter contemplated by the federal statute was limited in scope to "plaintiff's right to pursue a claim under federal law" and therefore was not relevant to triggering the statute of limitations for the state claim. Id. at *3.

Finally, the text of the EEOC right-to-sue notification makes no indication that the claimant has a right to sue under state law nor does it make any mention of the VHRA or any other state law. Am. Compl. Ex. 18. To the contrary, the text of the EEOC right-to-sue notification lists exclusively the following federal statutes: "Title VII, the [ADA], the Genetic Information Nondiscrimination Act, [] the Age of Discrimination in Employment Act. . . [and] the Equal Pay Act." Id. See also Rodriguez v. West

Ink, LLC, 603 F.3d 810, 816 (10th Cir. 2010) (finding that nothing in the EEOC right-to-sue notification would inform a complainant that the federal agency was acting on the state agency's behalf).

To conclude, at this juncture, Plaintiff's VHRA claim is procedurally defective because she has not met the VHRA requirement that a claimant obtain a right-to-sue notice from FEPA prior to filing her state law claim.[16] Accordingly, Plaintiff's claim is procedurally defective and Count Two is **DISMISSED WITHOUT PREJUDICE.**

### Count Three – Violation of § 40.1-27.3 of the Code of Virginia

Plaintiff submits that she is entitled to damages because Defendant retaliated against her for reporting a violation of law, as proscribed by Section 40.1-27.3 of the Code of Virginia. See Am. Compl. ¶¶ 44-50. Title 40.1, Chapter Three, Section 27.3 prohibits employers from retaliating against employees who participate in certain protected conduct. Va. Code Ann. § 40.1-27.3. Among other things, the provision prohibits retaliation against an employee "[who] in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official." Va. Code Ann. § 40.1-27.3(A)(1).

---

[16] This determination may also present the question whether Plaintiff's VHRA claim is time-barred, which the court finds unnecessary to decide here.

In response, Defendant argues that Section 40.1-27.3 does not apply to its conduct due to a general exclusion contained in Chapter 1 of Title 40.1. See ECF No. 9 at 22-25. Title 40.1, Chapter 1, Section 2.1 of the Code of Virginia provides that:

> The provisions of *[Title 40.1]* and any rules and regulations promulgated pursuant thereto shall not apply to the Commonwealth or any of its agencies, institutions, or political subdivisions, or any public body, unless and to the extent that, coverage is extended by specific regulation of the Commissioner or the Board.

Va. Code Ann. § 40.1-2.1 (emphasis added). Chapter 1, Section 2 of Title 40.1 defines "Commissioner" as the "Commissioner of Labor and Industry" and "Board" as the "Safety and Health Codes Board." Va. Code Ann. § 40.1-2.

Since Defendant, the School Board of the City of Norfolk, is a public body,[17] the plain language of Section 40.1-2.1 operates to exclude its conduct from the reach of *all* provisions of Title 40.1 unless the Commissioner or Board have specifically provided otherwise. Defendant points out, see ECF No. 9 at 22-25, that no statutory text provides that Section 40.1-27.3, despite the exclusion per Section 40.1-2.1, applies to Defendant, specifically, or to the Commonwealth or any public body, generally.

Yet, in other articles of Chapter 3, the General Assembly has displayed its intention to override the blanket exclusion from

---

[17] See Va. Const. art. VIII, § 7 ("The supervision of schools in each school division shall be vested in a school board . . .").

Section 40.1-2.1. For example, Article 1.1 of Chapter Three (the Virginia Minimum Wage Act) contains a provision listing definitions specific to the Article 1.1. See Va. Code Ann. § 40.1-28.9. In particular, the definition of "employer" in Section 40.1-28.9 specifically "includes the Commonwealth, . . . its agencies, institutions, or political subdivisions, and any public body." Id. On the other hand, Article 1, within which Section 40.1-27.3 is organized, contains no similar article-specific definitions. Therefore, the definition of "employer" that applies to Article 1 is the general definitions provision for the Title. See Va. Code Ann. § 40.1-2. Under that provision's definition of employer, there is no mention that "the Commonwealth, . . . its agencies, institutions, or political subdivisions, [or] any public body . . ." are included.[18] Compare Va. Code Ann. § 40.1-2 with § 40.1-28.9.

Plaintiff responds by arguing that Section 40.1-2 "read as a whole" does not "cancel Defendant's status as an 'employer' for purposes of Code § 40.1-27.3," because reading it to have such effect would "render an absurdity." See ECF No. 10 at 20.

---

[18] The definitions section of Title 40.1 explains that "employer" means "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code Ann. § 40.1-2.

Specifically, Plaintiff argues that "[i]t is impossible to believe that the General Assembly intended" Section 40.1-27.3 to be inapplicable to Defendant "when it drafted the various provisions in Chapter 3 that provide a variety of protections for the benefit of employees in Virginia." ECF No. 10 at 21.

However, the court construes statutes within the Code of Virginia "to 'ascertain and give effect to the intention' of the General Assembly." Farhoumand v. Commonwealth, 764 S.E.2d 95, 98 (Va. 2014) (quoting Rutter v. Oakwood Living Ctrs. Of Va., Inc., 710 S.E.2d 460, 462 (Va. 2011)). As this "intent 'is usually self-evident from the statutory language," the court applies "the plain meaning of the words used in the statute." Id. (quoting Rutter, 710 S.E.2d at 462). Therefore, the court ultimately agrees with Defendant's position, as it is the necessary result of affording the operative language codified by the General Assembly its plain meaning.[19] The court concludes that failing to provide a definition of employer in Section 40.1-27.3 that includes the Commonwealth and other public bodies was an intentional omission by the General Assembly. Thus, Section 40.1-27.3 is inapplicable to Defendant.

---

[19] The court does not reach Defendant's other arguments on this issue, as doing so is unnecessary given the plain meaning of the statutory text.

Though the Supreme Court of Virginia has not squarely addressed the issue, at least two Virginia Circuit Courts have. In Konate v. Norfolk State Univ., Judge Martin of the Circuit Court for the City of Norfolk sustained the defendant university's plea in bar[20] concerning the applicability of Section 40.1-27.3 to the institution.   No. CL 21-5224 (Va. Cir. Feb. 7, 2022) (Norfolk). Judge Martin held that because the University was an "agency or institution of the Commonwealth," and the plaintiff did not "contend that the Commissioner of Labor and Industry or the Safety and Health Codes Board has issued any rule or regulation applying . . . § 40.1-27.3 to the Commonwealth or the defendant," the University was not an "employer" within the meaning of that section. See id.

Judge Glassman of the Circuit Court for Southampton County applied similar reasoning when assessing whether a different section within Chapter 3 of Title 40.1 applied to a school board. See Andre v. Southampton Cty. Sch. Bd., CL21000578-000 (Va. Cir. Apr. 1, 2022) (Southampton Cty.). At issue in Andre was whether Article 2, Section 40.1-29 (the Wage Theft Act) applied to the defendant school board. Id. Judge Glassman held that it did not,

---

[20] "A plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery. The moving party has the burden of proof on that issue." Hilton v. Martin, 654 S.E.2d 572, 574 (Va. 2008) (citing Weichert Co. of Va. v. First Comm. Bank, 431 S.E.2d 308, 309 n.* (1993)).

because Section 40.1-2.1 excluded the board from the definition of "employer" in the Wage Theft Act. See id.

Plaintiff asks the court to "reject" the reasoning applied to reach these decisions as "erroneous." ECF No. 10 at 21. Instead, Plaintiff points to two cases which she submits support her argument that Section 40-27.3 may nevertheless be applied to Defendant. Id. In those cases, the City of Norfolk and the City of Chesapeake were sued for retaliation under Section 40-27.3. See Baka v. City of Norfolk, No. 2:21-cv-419, 2022 WL 757218 (E.D.Va. March 11, 2022) (Jackson, J.); Alexander v. City of Chesapeake, CL21-0013, 108 Va. Cir. 161 (Chesapeake City 2021). Plaintiff correctly points out that both courts denied the defendants' attempts to dismiss the plaintiffs' Section 40-27.3 claims. Baka, 2022 WL 757218, at *20 (denying defendant's Fed. R. Civ. P. 12(b)(6) motion); Alexander, 108 Va. Cir., at *2 (overruling defendant's demurrer). However, the reasoning of each court was limited to rejecting, in turn, each of the defendant's arguments. Id. Neither defendant had argued that the text of Section 40.1-2 excluded them from the reach of Section 40-27.3. Therefore, since the courts in both cases did not reach the relevant issue here, their holdings are not controlling. Id.

Accordingly, the court **FINDS** that Section 40.27-3 does not apply to Defendant. Thus, Count Three is **DISMISSED WITH PREJUDICE.**

40

## V. CONCLUSION

For the reasons stated above, Defendant's Motion, ECF No. 8, is **GRANTED in part** and **DENIED in part**. The court **DENIES** Defendant's Motion as to Count One. The court **GRANTS** Defendant's Motion as to Count Two, which is **DISMISSED WITHOUT PREJUDICE**. Finally, the court **GRANTS** Defendant's Motion as to Count Three, which is **DISMISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for the parties.

**IT IS SO ORDERED.**

                              /s/
                    Rebecca Beach Smith
                    Senior United States District Judge

                    _____
                        REBECCA BEACH SMITH
                    SENIOR UNITED STATES DISTRICT JUDGE

November 9 , 2022

41