IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHERYL R. JORDAN,

    Plaintiff,

v.        Case No.: 2:22-cv-167

SCHOOL BOARD OF THE CITY OF NORFOLK,

    Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES your plaintiff, Cheryl R. Jordan ("Jordan"), by counsel, and files this reply brief for consideration by this Honorable Court.

## I.   PROCEDURAL POSTURE

On August 1, 2023, Jordan filed "Plaintiff's Motion for Partial Summary Judgment" (ECF 23) and her "Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for Partial Summary Judgment." ECF 24.

On August 15, 2023, the defendant School Board of the City of Norfolk ("School Board') filed "Defendant's Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment." ECF 33.

Jordan now presents this reply brief in accordance with the briefing schedule set forth in Local Rule 7(F)(1).

## II.   JORDAN'S REPONSE TO THE SCHOOL BOARD'S ATTEMPTED REBUTTAL OF JORDAN'S STATEMENT OF UNDISPUTED FACTS

In Jordan's brief filed August 1 (ECF 24), she presented 29 numbered paragraphs stating facts that she contends are undisputed. See ECF 24 at pp. 7-12.

The School Board's first response to Jordan's statement of additional undisputed facts is an assertion that Jordan's brief "does not include a single statement of undisputed facts under Local Civil Rule 56(B)." See ECF 33 at p. 2.[1]  However, the School Board then concedes on p. 3 of its brief that the documents identified and attached by Jordan as exhibits in her SUF 1-5 "speak for themselves."  The documents identified and attached by Jordan are communications that span July 29, 2021 through August 24, 2021, and the record is clear that all of those communications were received by or on behalf of the Board, and none of them were responded to or answered with a rebuttal or assertion of contradictory facts.  To the extent that the Board disagreed with the communications set forth in Jordan's SUF 1-5, it should have done so in a timely manner.  An employer's silence in such situations should result in a determination that it is estopped from doing so later.  See generally Dormeyer v. Comerica Bank-Illinois, 223 F. 3d. 579, 582 (7th Cir. 2000) (an employer's silence as to entitlement to FMLA leave may result in the employer being estopped from later denying that the employee was eligible).  See also Colony Ins. Co. v. Peterson, 582 Fed. Appx. 156, 160 (4th Cir. 2014) (affirming finding of estoppel in insurance coverage dispute in which an insurer's "actions or silence when it ought to have spoken, intentionally or through culpable negligence" created detrimental reliance by the other party); Langenderfer v. Midrex Corp., 660 F. 2d. 523, 525-26 (4th Cir. 1981) (affirming ruling than an employer was estopped from denying an employee a bonus and recognizing that estoppel can result from affirmative statements or silence); Virginia First Sav. & Loan Assoc. v. Wells, 224 Va. 691 (1983) ("One who has been silent when he should have spoken will not be permitted

---

[1] Ironically, the School Board's attempted rebuttal repeatedly violates Local Rule 56(b) by failing to cite "the parts of the record relied on to support the facts alleged to be in dispute."  All facts not properly rebutted should be treated by the court as uncontested and true.

to speak when he should be silent." Id. at 692, quoting Nat'l. Airlines, Inc. v. Shea, 223 Va. 578, 583 (1982)).

The Board's response to Jordan's SUF 6, which relates to a letter dated September 14, 2021 that Jordan received from the Virginia Department of Labor and Industry, is to claim that the letter "speaks for itself" (see ECF 33 at 4), but assert that the letter does nothing to support Jordan's claims of environmental problems at Sherwood Forest. Of course, the Board chooses to ignore the language in the letter acknowledging that "those extremely sensitive to mold and spores" could be adversely affected even by a low "spore counts detected in areas sampled…." See ECF 24-13 at p. 2. Jordan is such a person.

Regarding the Board's response to Jordan's SUF 7, the Board does not deny it but instead claims that the testimony of one of its own members, Lauren Campsen, is "irrelevant to the issues regarding provision of a reasonable accommodation" to Jordan, despite Board Member Campsen (a) being totally ignorant of Jordan's medical evidence submitted to the Board, (b) not knowing what the ADA interactive process is and (c) not knowing why Jordan was transferred from Sherwood Forest to Lindenwood even though the Board is made aware of transfers and has oversight regarding such personnel matters. The ignorance of a person in Board Member Campsen's position is relevant to Jordan's assertion that the Board largely ignored Jordan and made no effort to engage in the interactive process that is required by the ADA.

The Board responds to Jordan's SUF 10 by admitting that Board Member Jordan testified as stated, but the Board then claims that Board Member Jordan's "personal opinions are irrelevant" to this litigation, notwithstanding testimony by Board Member Jordan that he was "shocked" and "embarrassed" about the conditions at Sherwood Forest, and told this to Cheryl Jordan. The Board also claims that Board Member Jordan's personal observations of Cheryl

3

Jordan wheezing and having trouble breathing while at Sherwood Forest in 2019 or 2020 is irrelevant to her claims about conditions at Sherwood Forest and the need for accommodations. The Board is wrong because Board Member Jordan was in a position to make personal observations about both the Sherwood Forest building and Cheryl Jordan's struggles to breathe while in it, and his testimony combined with other evidence proves that the conditions at Sherwood Forest were terrible and that they adversely impacted Cheryl Jordan's health. That type of testimony is hardly "irrelevant."

In response to Jordan's SUF 11, the Board admits the truth of the SUF, but claims that Board Member Jordan's request of the superintendent to conduct a site visit at Sherwood Forest in 2019, and her failure to do so, is "irrelevant." However, the superintendent's indifference in 2019 is certainly relevant to Jordan's claims that she remained indifferent and uninterested when Jordan made complaints and requested accommodations.

Regarding Jordan's SUF 12, the Board does not deny the truth of it, but calls it "speculative and irrelevant" that Board Member Jordan was escorted through the building by Cheryl Jordan in January 2021 and personally witnessed "leaks and ceiling tile issues" as well as indications of mold and other problems in the building. Aside from it being stunning that the Board would call such testimony from one of its own members "speculative and irrelevant" in the context of leaks, indications of mold and other problems, the evidence is far from being either speculative or irrelevant. It is not necessary that any witness identify exactly what type of mold, mildew or other hazard is present in a building with obvious signs of leaking. The simple fact is that Jordan's observations were corroborated by a member of the School Board and the evidence at trial will show that those conditions continued through Jordan's time at Sherwood Forest.

In Jordan's SUF 13, she asserts that Board Member Jordan could not identify any reasons why Cheryl Jordan could not have performed the essential functions of her job working remotely.  The Board's response is not a true rebuttal but instead is a claim that this does not create a dispute of material fact.  Of course, that must be incorrect because the Board reviews personnel reports, decisions and recommendations and obviously has to be informed regarding the essential functions of high-level positions such as principal and whether such jobs require an in-person presence in order for the jobs to be performed.  The Board does not explain anything legally or logically as to why Board Member Jordan's testimony on this point is unimportant or irrelevant.  His lack of knowledge about why Cheryl Jordan was refused an opportunity to work remotely is at least suggestive of the fact that she could have done so but was arbitrarily and capriciously denied the opportunity.

Regarding Jordan's SUFs 14-16, the Board responds by downplaying the significance of Board Member Jordan's lack of knowledge about why Cheryl Jordan was denied a transfer to Richard Bowling and why the School Board's employees failed to explain to Cheryl Jordan the reasons why her requested accommodations were denied.  Once again, the fact that a member of the School Board was and is totally in the dark about such important matters is indicative of a lack of interest and concern on the part of the School Board and the employees who report to it.  That evidence supports Jordan's assertions that her legitimate health concerns and requests for accommodations were largely ignored and never given any good-faith consideration.

The School Board responds to Jordan's SUF 17 without any denial or rebuttal.  Instead, the Board claims that Board Member Jordan's concerns about potential animosity being exhibited against Cheryl Jordan is "unsupported speculation."  But Board Member Jordan's observations are more than that.  He was quite taken aback by the manner in which Cheryl

Jordan was treated, and his testimony, particularly when combined with other testimony and evidence, supports Jordan's claims that she was mistreated and retaliated against.

In Jordan's SUF 18, she points out that Superintendent Byrdsong never reviewed any of Jordan's personnel records or evaluations at any time, including when Jordan requested reassignment to Richard Bowling but was passed over in favor of someone with less experience. This testimony is unrefuted, and instead of attempting to deny it, the School Board tries to justify Superintendent Byrdsong's lack of attention and diligence.  Of course, the School Board is free to have Superintendent Byrdsong attempt to explain why she has never reviewed Jordan's personnel records or evaluations, but the fact remains that Superintendent Byrdsong made important decisions - - and denied Jordan fair consideration for a transfer that Jordan requested - - without reviewing critical information necessary to making an informed decision.  Those facts are undisputed.

Regarding Jordan's SUF 20, the Board responds to Superintendent Byrdsong's lack of knowledge about why Jordan was denied a reassignment request and lack of ability to identify policies that take into account requested ADA accommodations as being unimportant and immaterial.  But the School Board cannot have it both ways.  On the one hand, the School Board has repeatedly asserted that Superintendent Byrdsong is the sole decision-maker on personnel matters such as transfers of principals from one school to another, but then claims that no weight should be assigned to the superintendent's lack of information about her own decision about Jordan and whether any of the NPS policies take into account ADA considerations.  In any event, her testimony on these points is unrebutted.

Regarding Jordan's SUF 21, the Board claims that Superintendent Byrdsong's disagreement with only one fact in an email sent by Jordan is irrelevant.  That has to be wrong

6

because Superintendent Byrdsong was asked to identify every inaccuracy in Jordan's email, and she took the time to read the entire email communication. That email (ECF 7-10) made a number of factual assertions, including:

(a) That Jordan was dealing with "extensive medical challenges" that she had been experiencing over the past "3-4 years as principal of Sherwood Forest Elementary School;"

(b) That Jordan had "submitted an abundance of medical documentation written to Norfolk Public Schools' personnel from [her] various doctors;"

(c) That her requests for accommodations (i.e. remote work or reassignment) were unjustly denied; and

(d) That she was continuing to seek reassignment, in particular to Richard Bowling Elementary.

Superintendent Byrdsong had the opportunity to refute any or all of those allegations set forth in Jordan's email, but did not do so. The failure to refute or deny those parts of Jordan's email constitute an admission of those facts.

In Jordan's SUF 22, she asserts that Byrdsong was unable to explain why two other individuals were selected over Jordan to become principals at Richard Bowling, despite having inferior experience. The Board claims inaccurately that the "relative qualifications of candidates for principal positions have not been produced in discovery and are irrelevant to the issue of whether the granted accommodation of Lindenwood was reasonable." Superintendent Byrdsong testified that the first individual selected to serve at Richard Bowling when Jordan was denied a transfer was a man with three months of experience working for NPS, and he resigned after three months. See ECF 24-5 at 94:6-24. The next individual selected to serve as principal at Richard

Bowling (instead of Jordan) had never served as a principal.  Id. at 107:4-19.  By contrast, Jordan "has many years experience" working for NPS (Id. at 106:11-18), including her current service as a principal.  The School Board cannot simply ignore the fact that individuals with inferior qualifications were selected for the principal position at Richard Bowling when they had inferior qualifications and did not need an ADA accommodation.

      The School Board responds to Jordan's SUF 23 by declining to deny it and instead claiming that it is "irrelevant" that Byrdsong did not recall having any discussions with Billups about the fact that Jordan was seeking the principal position at Richard Bowling.  Of course, her lack of memory about any discussion on the topic, combined with her admitted failure to review any of Jordan's personnel records or evaluations and her admitted approval of less-qualified individuals to serve as principal at Richard Bowling, all support Jordan's assertions that she was denied reasonable accommodations without any good-faith consideration or discussion.

      Regarding Jordan's SUF 26-27, the School Board does not refute them and overlooks the importance of these facts.  Without question, NPS Chief Human Resources Officer D. Timothy Billups was aware that Jordan requested reassignment from Sherwood Forest because of medical reasons, and he claimed that the subsequent reassignment to Lindenwood was in accordance with what Jordan's doctors requested.  This is important because the School Board is now attempting to deny that Jordan is a qualified individual with a disability entitled to reasonable accommodations, notwithstanding receiving voluminous medical information and purportedly acting in accordance with it instead of challenging or denying that Jordan satisfied the required criteria.  At all material times, the School Board did not deny that Jordan qualified as an individual with a disability entitled to reasonable accommodations.  Instead, the whole dispute centered on whether Jordan's requests were reasonable, were given appropriate consideration

and could be or were reasonably accommodated.  The School Board cannot change history on this subject and cannot escape the testimony of Billups and its other employees.

Regarding Jordan's SUF 28 and 29, they are important enough to warrant reproduction here:

> 28.  In evaluating Jordan's requests for work accommodations, neither the Board nor its administrators ever challenged or disputed any of the medical claims or letters submitted by/for Jordan to NPS.  See Byrdsong deposition (Exhibit 5) at 78:3-13 (saying she believed Jordan has the "medical challenges" that Jordan claimed); 123:2-124:5 (Byrdsong has no information that any health information provided by Jordan is inaccurate in any way, nor does she have any information indicating that Jordan has been untruthful relating to any aspect of her employment with NPS).
>
> 29.  In evaluating Jordan's requests for work accommodations, the Board and NPS treated Jordan as an individual with a disability (as defined by the ADA), who requested accommodations.  See e.g. Billups deposition (Exhibit 15) at 25:1-16; 38:7-23 (testifying that Jordan made "medically based requests for reassignment," Billups reviewed her doctors' letters, and as a result, Jordan was reassigned from Sherwood Forest to Lindenwood).

Once again, the School Board attempts to escape its prior admissions made through words and conduct.  As one more piece of evidence refuting the School Board's litigation position that Jordan must prove her status as a qualified individual with a disability, an "Employer's Accident Report" executed by NPS and submitted to the Virginia Worker's Compensation Commission is attached hereto as Exhibit 1, and an April 13, 2022 email from Billups to Jordan attaching three documents, including the injury form, is attached as Exhibit 2.  As explained by Billups, this documentation was submitted to the Virginia Retirement System ("VRS").  These are additional pieces of evidence that prove that the School Board did not challenge Jordan's status as a qualified individual with a disability entitled to request reasonable accommodations, and, in fact, explicitly agreed that she was.  Only during adversarial proceedings has the School Board, through its legal counsel, attempted to reverse course.

### III. <u>LAW AND ARGUMENT</u>

Jordan should be granted summary judgment on her failure to accommodate claim.

A failure to accommodate claim requires a plaintiff to prove:

1. That she had a disability within the statutory meaning;

2. That the employer knew of her disability;

3. That a reasonable accommodation would permit her to perform the essential functions of the position; and

4. That the employer refused to make the accommodation.

<u>Jordan v. School Bd. of the City of Norfolk</u>, 2022 U.S. Dist. LEXIS 204781, *16 (E.D. Va. 2022), citing and quoting <u>Perdue v. Sanofi-Aventis U.S., LLC</u>, 999 F. 3d 954, 959 (4th Cir. 2021). Jordan has established that there are irrefutable facts supporting each element.

First, it is beyond question that she has had a disability within the statutory meaning. The unrebutted evidence establishes that Jordan suffers from restrictive lung disease, asthma and similar ailments that substantially limit her respiratory system. These are qualifying disabilities under the ADA. <u>Jordan v. School Bd. of the City of Norfolk</u> at *15-16.

Second, the School Board knew of Jordan's disability. There has never been any evidence or argument presented to the contrary.

Third, a reasonable accommodation would permit Jordan to perform the essential functions of her position. Initially, Jordan requested to continue working as principal at Sherwood Forest on a remote basis. While the School Board attempts to claim that such a request is not reasonable, it is undisputed that Jordan has previously worked on a remote basis, claimed to the School Board and other NPS officials that she could continue to do so, and never received any contradictory evidence showing that she could not. In fact, Jordan was denied any

actual, good-faith interactive process to discuss the feasibility and reasonableness of what she requested.

After being denied the opportunity to work remotely, Jordan requested a transfer to another school and specifically requested a transfer to Richard Bowling. Transfer to another school is a "reasonable accommodation" that easily could have been granted, particularly when there was an opening at Richard Bowling on two occasions and Jordan was more qualified than the individuals selected over her.

Finally, the fourth element of a failure to accommodate claim - - refusal by the employer to make the accommodation - - is not in dispute. It is uncontested that Jordan was denied any opportunity (or even any good-faith consideration of an opportunity) to work remotely, and then she was passed over twice and refused any serious consideration when she requested a transfer to Richard Bowling. Those events occurred and cannot be denied.

## IV. CONCLUSION

Because the unrebutted and irrefutable evidence proves (1) that Jordan had a disability within the statutory meaning set forth in the ADA, (2) that the School Board knew of her disability, (3) that one or more reasonable accommodations would have permitted Jordan to perform the essential functions of her position, and (4) that the School Board unreasonably refused to accommodate Jordan, she is entitled to summary judgment on her failure to accommodate claim. That means the issues in contention for trial should be reduced to the question of whether Jordan can prove her retaliation claim, the quantum of damages and kinds of other remedies Jordan is entitled to receive, and the quantum of attorney's fees and costs Jordan is entitled to be awarded.[2]

---

[22] Jordan has sought the agreement of counsel for the School Board to bifurcate the issue of attorney's fees and costs to be determined at a separate hearing after trial in the event that Jordan prevails on one or more claims that

CHERYL R. JORDAN

By_____/s/_____
            Of Counsel

Kevin E. Martingayle, Esquire (VSB #33865)
BISCHOFF MARTINGAYLE, P.C.
3704 Pacific Avenue, Suite 300
Virginia Beach, VA 23451
(757) 233-9991
(757) 416-6009 (direct dial)
(757) 428-6982 (facsimile)
Email: martingayle@bischoffmartingayle.com

## **CERTIFICATE**

    I hereby certify that on this 21st day of August, 2023, the foregoing was filed with the Clerk of Court using the CM/ECG system, which will send notification of such filing (NEF) to Kristopher R. McClellan, Esquire, and Bonnie P. Lane, Esquire.

_____/s/_____
Kevin E. Martingayle

---

entitle her to such relief. Counsel for the School Board has not yet announced a position on this request, but it is Jordan's counsel's understanding that this typically is the way in which awards of attorney's fees and costs are handled, and it is consistent with Jordan's counsel's experience in such matters.